FILED
OCT 25 2012
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| AARON JOHNSON, GEORGIA JACKSON, AND BRUCE BUNNING, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS, <br><br> V. <br><br> TRUGREEN LIMITED PARTNERSHIP, TRUGREEN, INC., TRUGREEN COMPANIES, LLC, TRUGREEN, AND SERVICEMASTER, DEFENDANTS. | CAUSE NO. A-12-CV-166-LY |

## ORDER

Before the court in the above styled and numbered cause of action are Defendants' Amended Motion to Dismiss, Strike Class Claims and Compel Arbitration and Supporting Brief, filed July 10, 2012 (Clerk's Doc. No. 17), Plaintiffs' Response to Defendants' Motion to Dismiss and/or Motion to Compel Arbitration, filed July 25, 2012 (Clerk's Doc. No. 18), and Defendants' Reply Brief in Support of Amended Motion to Dismiss, Strike Class Claims and Compel Arbitration, filed August 1, 2012 (Clerk's Doc. No. 24). Having reviewed the motion, response, reply, pleadings, and the parties' contract at issue in this cause, the court finds that the motion should be granted.

### I. Background

Plaintiffs' complaint alleges that they are nonexempt employees who worked more than 40 hours a week as commercial technicians and telemarketers for Defendant TruGreen Limited Partnership, a subsidiary of ServiceMaster.[1] TruGreen provides lawn, tree, and shrub-care

---

[1] Plaintiffs also name ServiceMaster's other subsidiaries, TruGreen, Inc., TruGreen Companies, LLC, and TruGreen, as Defendants.

maintenance services throughout the United States and Texas. Plaintiffs contend that TruGreen failed to compensate them at the federally mandated minimum-wage rate by improperly employing a "fluctuating workweek method" of payment, in violation of the Fair Labor Standards Act. *See* 29 U.S.C. §§ 206, 207(a); 29 C.F.R. § 778.114(a). Plaintiffs bring their complaint in order to recover unpaid-overtime compensation owed to them and all other similarly situated current and former employees of TruGreen. TruGreen moves to dismiss this suit and compel Plaintiffs to arbitrate their claims on an individualized basis in accordance with TruGreen's mandatory-arbitration program.

TruGreen argues that the ServiceMaster Company and its subsidiaries, including TruGreen, have been utilizing an alternative-dispute-resolution program known as "We Listen" since January 1, 2009. According to TruGreen, the "We Listen" program is a comprehensive dispute resolution process whereby employees agree to use the program to address any employment-related concerns and complaints, as a term and condition of their employment. TruGreen revised its existing arbitration program ("the 2009 program") in late 2011, and the new version of "We Listen" became effective January 1, 2012 ("the 2012 revision").

The 2009 program's "Plan and Rules Document" defines itself as "the exclusive procedural mechanism for the final resolution of all Disputes falling within its terms." This document defines "Dispute" as:

> all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Plan . . . . including, but not limited to, any matter with respect to . . . the employment or potential reemployment of an Associate, including the terms, conditions, or termination of such employment with the Company . . . .

The "We Listen" booklet states that the program covers all "concerns related to retaliation, wrongful

discharge, safety, and wage and hour issues."

The 2012 revision's plan document states that the program "includes a mutual agreement to arbitrate covered Disputes which is the exclusive, final and binding remedy for both the Company and [employee]." The 2012 revision expressly includes all disputes arising under "all employment related law, including . . . . the Fair Labor Standards Act" and contains a class-action waiver, which provides that all participating employees waive any right to bring a dispute as a class, collective, or representative action.

TruGreen maintains that Plaintiffs were each made aware of the 2009 program and the 2012 revision and agreed to submit all employment-related disputes to binding arbitration by either signing agreements to utilize the program or by continuing employment after receiving notice of the program.

## II. Legal Standard

"Arbitration is 'a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *PaineWebber Inc. v. The Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 462 (5th Cir. 2001) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). Courts conduct a two-step inquiry in determining whether parties should be compelled to arbitrate a dispute. *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004). First, the court determines whether the parties agreed to arbitrate the dispute by evaluating whether there is a valid agreement to arbitrate and whether the dispute falls within the scope of the agreement. *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 536 (5th Cir. 2003) (citation omitted). Second, if the court finds that the parties agreed to arbitrate, it next determines whether any federal statute or policy renders the claims nonarbitrable. *Bailey*, 364

F.3d at 264. There is a strong presumption that arbitration clauses cover disputes between parties to such agreements and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Such clauses will be overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *United Steelworkers of Am.*, 363 U.S. at 582.

Although the express terms of the Federal Arbitration Act provide that "a stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in writing for such arbitration . . . ," the Fifth Circuit has interpreted this language to mean only that the district court cannot deny a stay when one is properly requested. 9 U.S.C. § 3 (2006); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir.1992). "This rule, however, was not intended to limit dismissal of a case in the proper circumstances." *Alford*, 975 F.2d at 1164. If all of the issues raised before the district court are arbitrable, dismissal of the case is permissible. *Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 678 (5th Cir. 1999).

### III. Analysis

Review of the pleadings and the parties' contract reveals that the contract at issue contains a valid agreement to arbitrate, that the dispute between the parties and all issues raised fall within the scope of the arbitration agreement, and that no federal statute or policy renders the claims nonarbitrable. Further, the court finds that the class-action waiver contained in the 2012 revision is valid. Accordingly, the court will grant TruGreen's motion to compel, strike Plaintiffs' class claims, and compel the parties to arbitration.

### A. *Notice and Acceptance of Mandatory Arbitration Agreement*

"In determining whether the parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement." *Wash. Mut. Fin. Group*, 364 F.3d at 264 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Both parties acknowledge that Texas law applies here. In Texas, the party seeking to compel arbitration bears the burden of establishing the existence of an arbitration agreement and that the claims raised fall within the scope of that agreement. *See Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996).

"An employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of the employer's arbitration policy and accepted it." *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162 (Tex. 2006) (per curiam). When determining whether an employee received notice of a binding arbitration agreement, the notice analysis is not confined to the underlying agreement, but to all communications between the employer and employee. *Id.*; *see also In re Halliburton Co.*, 80 S.W.3d 566, 569 (Tex. 2002) (holding that notice and summary of arbitration policy given to the employee was unequivocal notice); *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986) (holding that notice is provided if employee has knowledge of employment terms).

The record in this case demonstrates that Johnson, Jackson, and Bunning all received notice of TruGreen's binding arbitration agreement. Johnson, Jackson, and Bunning each signed multiple employee-compensation plans, which contained language making their employment "contingent on [their] agreement to utilize ServiceMaster's alternative dispute resolution program *We Listen* to resolve any and all work related disputes/concerns and to arbitrate such disputes if they are not

resolved." Each of these compensation plans also informed Plaintiffs that they could access full details regarding the program from their manager or Human Resources representative and provided a website link to the program's terms.[2] Further, each compensation plan executed in 2010, 2011, and 2012 contains the following language in bold print directly above the signature line:

> I have read this Compensation Plan, have discussed it with my supervisor, and have been given the opportunity to ask questions about the Plan. I agree to abide by the policies and procedures and guidelines set forth herein, including agreement to utilize the "We Listen" program to resolve employment related disputes and/or disputes related to this Plan.

Additionally, Bunning signed two Employee Handbook Acknowledgment Forms in March and July 2010, which stated that "[b]y signing this acknowledgment form[,]" the employee "also agree[s] to utilize . . . *We Listen* to resolve any and all work-related disputes/concerns and to arbitrate such disputes if they are not resolved." Bunning also signed a "We Listen Acknowledgment Form" in March 2010, stating he had received the We Listen booklet and understood that employment-related disputes must be submitted to binding arbitration. Finally, Bunning admitted in his deposition that he received a copy of the 2012 revision, read it in its entirety, and refused to sign it.

Although Jackson denies she received a copy of the 2012 revision, TruGreen need not conclusively establish it provided each Plaintiff with the revision itself to prove that Plaintiffs had notice of its mandatory arbitration policy. *See Halliburton*, 80 S.W.3d at 569. By conditioning Plaintiffs' employment on their participation in mandatory arbitration of all work-related disputes

---

[2] Johnson signed seven compensation plans from January 2009 to January 2012, all of which contained this language. Bunning signed a compensation plan with this language in August 2010. Although Jackson alleges he signed a compensation plan "under duress" in September 2011, he signed an additional plan in January 2012 without objection to his terms of employment. The compensation plans executed by Johnson and Jackson in 2012 specifically reference the 2012 revision of the program.

and informing Plaintiffs of this condition in their compensation agreements, TruGreen provided its employees with unequivocal notice of its arbitration policy. *See Hathaway*, 711 S.W.2d at 229. Moreover, Plaintiffs could access full details of the arbitration program through the intranet website link provided in their compensation agreements; all an employee needs to access the website link is an employee ID number, which is provided to all employees at the time of hiring. Finally, TruGreen's 2012 pay stubs contained an express notation that "The We Listen dispute resolution and arbitration program has been revised and is available on the associate relations website or by calling [phone number]."

Having established that Plaintiffs received notice of both the 2009 program and the 2012 revision, the court next determines whether Plaintiffs accepted the agreement to arbitrate. "An at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law." *Dallas Peterbilt*, 196 S.W.3d at 162. It is undisputed that Plaintiffs were all at-will employees, and their signed compensation plans indicate that they continued employment with knowledge of the arbitration policy. Accordingly, there was valid acceptance of both the 2009 program and the 2012 revision's binding agreement to arbitrate.

**B.     *Consideration Underlying the Arbitration Agreement***

Plaintiffs argue that, even if they accepted the agreement to arbitrate, the agreement is invalid because there was insufficient consideration to support the parties' agreement. "In the context of stand-alone arbitration agreements, binding promises are required on both sides as they are the only consideration rendered to create a contract." *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (per curiam). A promise is illusory when it fails to bind the parties to the contract, as

in where a party can unilaterally change the agreement at any time without notice to the other party or unilaterally discontinue performance. *See In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010). Accordingly, "[a]n arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether." *Id.*

Plaintiffs argue that TruGreen reserved for itself a unilateral right to revise, supplement, or rescind the arbitration agreement by way of a provision in the TruGreen handbook, which provides that TruGreen "reserves the right to revise, supplement, or rescind any policies or portion of the handbook at any time as it deems appropriate, in its sole discretion." Because the TruGreen handbook references the "We Listen" program, Plaintiffs argue that the arbitration agreement is incorporated into the handbook, and thereby revisable at TruGreen's sole discretion. *See In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007) (documents incorporated into contract by reference become part of that contract); *see also Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202 (5th Cir. 2012) (holding arbitration agreement contained in employee handbook illusory).

Plaintiffs' reliance on *Carey* is misplaced. *Carey* concerned an arbitration agreement contained entirely within an employee handbook that contained a clause allowing the employer to revise, delete, or add to the employee handbook at its sole discretion. 669 F.3d at 204. The court held that the arbitration agreement was illusory, because the employer could unilaterally make changes to the handbook—and the arbitration policy contained therein—that had retroactive effect. *Id.* at 205–09. Significantly, the handbook contained no savings clause excepting pending disputes from changes made by the employer. *Id.* at 206–07. Therefore, the fact that the employer was required to provide written notice of any changes in the handbook was "not sufficient to render [the] arbitration provision non-illusory." *Id.* at 208.

Unlike *Carey*, both the 2009 program and 2012 revision are stand-alone agreements to arbitrate, separate and apart from the TruGreen employee handbook. Further, the employee handbook expressly states that it is "not intended to nor does it create contractual obligations of any kind." Because the employee handbook is not a contract, the handbook's reference to the "We Listen" program does not incorporate the parties' arbitration contract into that document. *Cf. Bank One*, 216 S.W.3d at 826. Moreover, neither arbitration agreement references the employee manual, so there is no basis for arguing that the arbitration agreements incorporate the language of the employee manual. *See 24R*, 324 S.W.3d at 568 (stand-alone arbitration contract was not rendered illusory by language in noncontractual employee policy manual and no savings clause was required). Accordingly, the court looks to the language in the 2009 program and 2012 revision, not the employee manual, to determine whether there was sufficient consideration to bind the parties.

The 2009 program document contains a provision allowing TruGreen to amend or terminate the arbitration agreement at any time, by giving at least 10 days' notice to its employees. However, the agreement also contains a savings clause, providing that "no amendment shall apply to a Dispute for which an arbitration proceeding has been initiated . . . ." The Texas Supreme Court has held that an arbitration contract is not illusory, where it contains a ten-day notice provision and a provision that any amendments would only apply prospectively. *Halliburton*, 80 S.W.3d at 569–70 (savings clause provided that "no amendment shall apply to a Dispute of which [Halliburton] had actual notice on the date of amendment"). The savings clause in *Halliburton* is not identical to the savings clause in the 2009 agreement, but Texas courts of appeals have found the distinction to be immaterial for purposes of consideration. *See, e.g., Nabors Drilling USA, LP v. Carpenter*, 198 S.W.3d 240, 248–49 (Tex. App.—San Antonio 2006, orig. proceeding) (reaching same result based on

substantially same language as arbitration agreement in this case); *In re Champion Technologies, Inc.*, 222 S.W.3d 127, 131–32 (Tex. App.—Eastland 2006, orig. proceeding) (same); *In re Kellogg Brown & Root*, 80 S.W.3d 611, 616 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding) (same). Because the 2009 agreement contains the necessary notice provision and savings clause, it is a valid agreement to arbitrate. The 2012 revision does not contain a clause allowing either party to unilaterally amend or terminate the arbitration agreement. Therefore, insufficient consideration is not a basis for invaliding the parties' agreement to arbitrate.

### C.  *Scope of the Arbitration Agreement*

Plaintiffs argue that the 2009 program specifically excludes "pay rate" disputes from the scope of arbitration, and thus their dispute falls outside of the agreement to arbitrate. Plaintiffs contend that the "critical issue in this case is whether TruGreen properly calculated the 'pay rates' of the Plaintiffs under the fluctuating workweek method." *See Samson v. Apollo Res., Inc.*, 242 F.3d 629, 633 (5th Cir. 2001) (describing fluctuating workweek method as fixed salary for where employee is paid overtime premium of one-half his regular rate of pay for each overtime hour).

Plaintiffs' complaint alleges that TruGreen failed to compensate Plaintiffs for their work in excess of 40 hours per work and failed to provide them with the federally mandated minimum wage rate in violation of the Fair Labor Standards Act. The 2009 program documents do not reference the Fair Labor Standards Act, and review of the 2009 plan documents support the conclusion that compensation and wage-and-hour issues were only subject to mandatory arbitration if they "contain[ed] a discrimination component." However, the 2012 revision expressly includes all "legal claims . . . related to . . . all employment related laws, including . . . the Fair Labor Standards Act." Plaintiffs continued or renewed their employment with TruGreen after the 2012 revision became

effective and thereby accepted the revised agreement to arbitrate. The 2012 revision itself specifies that "where there is a pre-existing arbitration agreement or written employment agreement containing an arbitration clause, the [2012 revision] shall be the governing agreement between the parties." Because Plaintiffs brought this suit in February 2012, when they had already assented to the revised agreement to arbitrate, the 2012 revision governs their dispute. Accordingly, Plaintiffs' legal claims asserted under the Fair Labor Standards Act fall within the scope of the agreement to arbitrate.

### D.   *Collective Action Waiver*

Plaintiffs bring their suit on their own behalf and on behalf of all other similarly situated TruGreen employees.[3] TruGreen moves to strike Plaintiffs' class claims and compel Plaintiffs to arbitrate on an individualized basis pursuant to the class-action waiver contained in the 2012 revision, which waives "any right for any dispute to be brought, heard, decided, or arbitrated as a class and/or collective action . . . ." Plaintiffs respond that the class-action waiver is unenforceable, because it violates the National Labor Relations Act, as set forth in a recent opinion by the National Labor Relations Board. *See In re D.R. Horton, Inc.*, 357 NLRB No. 184 (Jan. 3, 2012).

In *Horton*, the Board considered whether an employer violates the National Labor Relations Act by requiring its employees, as a condition of employment, to sign an agreement that precludes them from filing joint, class, or collective claims addressing their wages, hours, or other working conditions in any forum, arbitral or judicial. 357 NLRB No. 184, at *1. The class-action waiver in *Horton*, as here, was contained in an otherwise valid agreement to arbitrate "all disputes and claims relating to the employee's employment." *Id.*   An employee of D.R. Horton, a nationwide

---

[3] To date, over 100 TruGreen employees have filed a notice of consent to participate in this lawsuit. *See* Clerk's Doc. Nos. 25 & 26. The court has not certified a class at this time.

homebuilder, sought to arbitrate a collective claim that Horton was misclassifying a class of its employees in violation of the Fair Labor Standards Act. *Id.* After the employer refused to proceed with class arbitration on the basis of the waiver, the employee filed an unfair-labor-practice charge with the Board. *Id.* at *1–*2.

The Board held that Section 7 of the National Labor Relations Act confers a substantive right to engage in "concerted legal action addressing wages, hours or working conditions" and that this right includes the right to pursue collective or class actions. *See* 29 U.S.C. § 157 ("Employees shall have the right . . . to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ."). After recognizing this substantive right, the Board further held that requiring employees to waive the right constitutes an "unfair labor practice" under the Act. *See* 29 U.S.C. § 158(a)(1) (Employers may not "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title."). The Board then surveyed Supreme Court precedent on the Federal Arbitration Act, concluded that there was no conflict between the Board's interpretation of the National Labor Relations Act and the Federal Arbitration Act, and invalidated the entire arbitration agreement containing the class-action waiver. *Horton*, 357 NLRB No. 184, at *10–16.

Until *Horton*, courts had consistently enforced arbitration agreements containing class-action waivers under the Federal Arbitration Act, even those governing the employer-employee relationship. *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004) (FLSA claims subject to arbitration despite inability to proceed as class); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002) (same); *Vilches v. The Travelers Companies, Inc.*, No. 10-2888, 2011 WL 453304, at *5 & n.4 (3d Cir. Feb. 9, 2011) (same); *Caley v. Gulfstream Aerospace*

*Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005) (same); *Horenstein v. Mortg. Mkt., Inc.*, No. 99-36125, 2001 WL 502010, at *1 (9th Cir. May 10, 2011) (same). And numerous district courts have continued to follow these precedents and enforce such agreements in spite of *Horton*, on the basis that the Board's decision is contrary to governing federal law. *See, e.g., De Oliveira v. Citicorp N. Am., Inc.*, No. 8:12-cv-251-T-26TGW, 2012 WL 1831230 (M.D. Fla. May 18, 2012) (following controlling Eleventh Circuit precedent and compelling individual arbitration of FLSA claims). *See also, e.g., Delock v. Securitas Sec. Servs. USA, Inc.*, No. 11-520, 2012 WL 3150391 (E.D. Ark. Aug. 1, 2012); *Morvant v. P.F. Chang's China Bistro, Inc.*, No. 11–CV–05405–YGR, 2012 WL 1604851 (N.D. Cal. May 7, 2012); *Palmer v. Convergys Corp.*, No. 7:10–cv–145(HL), 2012 WL 425256 (M.D. Ga. Feb. 9, 2012); *LaVoice v. UBS Fin. Servs., Inc.*, No. 11–civ–230(BSJ) (JLC), 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012). Although Plaintiffs direct the court to two district court cases that have followed *Horton*,[4] the court finds the reasoning of these opinions unpersuasive in light of binding Fifth Circuit and Supreme Court precedent directing this court to enforce the arbitration agreement as written. *See AT&T Mobility LLC v. Concepcion*, __U.S.__, 131 S. Ct. 1740, 1748 (2011); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991); *Carter*, 362 F.3d at 298.

The Federal Arbitration Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has interpreted this provision as embodying "an emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, __U.S.__, 132 S. Ct. 23, 25 (2011). The "overarching purpose of the FAA . . . is to ensure the enforcement of

---

[4] *See Herrington v. Waterstone Mortg. Corp.*, No. 11–cv–779–bbc, 2012 WL 1242318 (W.D. Wis. Mar.16, 2012); *Owen v. Bristol Care, Inc.*, No. 11–04258–CV–FJG, 2012 WL 1192005 (W.D. Mo. Feb.28, 2012).

arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 131 S. Ct. at 1748. This policy favoring arbitration applies "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum . . . ." *Gilmer*, 500 U.S. at 28 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985)).

It is well settled that FLSA claims are subject to arbitration. *See Carter*, 362 F.3d at 298 (finding no evidence that Congress intended to preclude arbitration of FLSA claims in text or legislative history of statute). Moreover, the Fifth Circuit and Supreme Court have both recognized that the ability to proceed as a class under the FLSA is a procedural mechanism for adjudicating a legal claim, not a substantive legal right. *Gilmer*, 500 U.S. at 32 ("But even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator, the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred.") (internal quotation omitted); *Carter*, 362 F.3d at 298 (rejecting argument that inability to proceed collectively deprived plaintiffs of substantive rights guaranteed by FLSA). *See also Reed v. Fla. Metro. Univ., Inc.*, 681 F.3d 630, 643 (5th Cir. 2012) (characterizing class action as "a procedural device"). So long as Plaintiffs are fully able to vindicate the statutory cause of action underlying their suit, here the FLSA, their arbitration agreement is enforceable.

Moreover, this court is not required to defer to the National Labor Relations Board's interpretation of law outside of the National Labor Relations Act. *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 202–03 (1991). And for good reason. In *Horton*, the National Labor Relations Board misread *Gilmer* and inquired into whether the plaintiff could vindicate his statutory rights

arising from the National Labor Relations Act, even though the "statutory cause of action" at issue was the FLSA. *See* 357 NLRB No. 184, at *12. The question is not how arbitration effects all statutory rights, somehow related to a plaintiff's cause of action. It is whether the "statutory cause of action" forming the basis of a plaintiff's lawsuit may be vindicated in the arbitral forum. *See Gilmer*, 500 U.S. at 28. Had the Board looked to the correct statute, the FLSA, it would have been required to follow governing precedent and find the plaintiff's claims arbitrable. For these reasons, the court rejects Plaintiffs' argument that the collective-action waiver requires them to forego the National Labor Relations Act's substantive protections in violation of the principles set forth in *Gilmer*.

The court also notes that the Supreme Court has written extensively on the incompatibility of class procedures with arbitration. *See Concepcion*, 131 S. Ct. at 1750–52. In *Concepcion*, the Court held that the Federal Arbitration Act preempted a California common-law rule that barred class-action waivers as unconscionable contractual terms. The Court emphasized that arbitration agreements are contracts, and "parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit *with whom* a party will arbitrate its disputes." *Id.* at 1748–49 (internal citations omitted). Accordingly, to require "the availability of classwide arbitration" would interfere with the "principal purpose" of the Federal Arbitration Act, which is to "ensure that private arbitration agreements are enforced according to their terms." *Id.* at 1748 (internal quotation omitted). In light of this precedent strongly favoring the enforcement of agreements to arbitrate as written, the court finds the Board's interpretation of the Federal Arbitration Act extremely suspect.

Finally, although the National Labor Relations Board "is vested with primary jurisdiction to determine what is or is not an unfair labor practice," and as a general rule, federal courts must defer

to such determinations, *see Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982), the court is not persuaded that the Board's determination in *Horton* renders the class-action waiver or entire arbitration agreement invalid. Plaintiffs argue that if the class-action waiver constitutes an unfair labor practice, the contract is unlawful under the Federal Arbitration Act's savings clause. *See* 9 U.S.C. §2 (arbitration agreement invalid "upon such grounds as exist at law or in equity for the revocation of any contract"). In support of their argument that an unfair labor practice invalidates a contract, Plaintiffs direct the court to *Kaiser Steel*. *See* 455 U.S. at 86 (stating that "a court may not enforce a contract provision which violates § 8(e) [of the National Labor Relations Act])." Yet Section 8(e) contained express language voiding certain contracts. *See id.* at 84 ("any contract or agreement entered into heretofore or hereafter containing [a hot-cargo clause] shall be to such extent unenforceable and void"). Plaintiffs have not directed the court to any comparable statutory directive that has application here.

In summary, absent binding authority from the Fifth Circuit or Supreme Court adopting the reasoning in *Horton*, the court will follow current precedent and enforce the arbitration agreement as written. The class-action waiver in the parties' arbitration agreement is valid, and Plaintiffs must individually arbitrate their FLSA claims. Because all of the issues raised in this case are arbitrable, the court will dismiss this cause of action. *See Fedmet Corp.*, 194 F.3d at 678.

## IV. Conclusion

**IT IS THEREFORE ORDERED** that Defendants' Amended Motion to Dismiss, Strike Class Claims and Compel Arbitration and Supporting Brief (Clerk's Doc. No. 17) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs are **COMPELLED** to submit this dispute to arbitration.

**IT IS FURTHER ORDERED** that Plaintiffs' collective-action claims are hereby **DISMISSED**. Plaintiffs must arbitrate their claims on an individual basis.

**IT IS FINALLY ORDERED** that this action is **DISMISSED.**

SIGNED this _25th_ day of October, 2012.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE